**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-7032**

———————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

JAMES EVERETT FLOOD, III, a/k/a Junior, a/k/a Junebug, a/k/a Bug,

        Defendant – Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge.  (8:03-cr-00457-PJM-3; 8:11-cv-03563-PJM)

———————

Argued:  October 24, 2025                Decided:  August 13, 2026

———————

Before WILKINSON, RICHARDSON, and HEYTENS, Circuit Judges.

———————

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Wilkinson joined.  Judge Heytens wrote a dissenting opinion.

———————

**ARGUED:**  C. Justin Brown, BROWN LAW, Baltimore, Maryland, for Appellant.  Mary Jessica Kirsch Munoz, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF:**  Kelly O. Hayes, United States Attorney, David C. Bornstein, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

RICHARDSON, Circuit Judge:

James Flood is serving a life sentence for the kidnapping and killing of Eric Hayes. He moved to vacate his sentence under 28 U.S.C. § 2255, claiming that his trial counsel rendered ineffective assistance by failing to resolve his case with a plea agreement. The district court denied the claim without an evidentiary hearing. Flood says that was an error because the record contained factual disputes that only a hearing could resolve. But the dispositive facts are undisputed. The parties did discuss a plea. Yet the only deal the government would consider required Flood to proffer truthfully and to testify against the men who helped him kidnap and kill Hayes. Nothing in the record suggests he would have done either. Courts hold evidentiary hearings to resolve disputes, not to conjure them. Here, there was no dispute to resolve. So we affirm.

## I.      BACKGROUND

On January 3, 2002, a group of men, including James Flood, kidnapped and killed Eric Hayes.[1]  A federal grand jury charged Flood and two other men, Kenneth Lighty and Lorenzo Wilson, with (1) one count of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a) and § 2; (2) one count of conspiracy to kidnap, in violation of § 1201(c) and § 2; and (3) three counts of using a firearm during and in relation to a crime of violence, in violation of § 924(c) and § 2.

Kidnapping resulting in death is a capital offense. 18 U.S.C. § 1201(a) ("[I]f the death of any person results, [the offender] shall be punished by death or life

---

[1] For a full account of their crimes, see *United States v. Lighty*, 616 F.3d 321, 337–42 (4th Cir. 2010).

imprisonment."). But the government pursued the death penalty against only Lighty, not Flood. So heading into his October 2005 trial, Flood faced a mandatory life sentence on the kidnapping charge. Flood's court-appointed counsel, Michael Lawlor and John McKenna, faced an uphill battle. Overwhelming evidence pointed to Flood's guilt.[2]

The parties agree that Flood never received a plea offer from the government. Affidavits prepared in light of Flood's § 2255 motion tell the story. In a short affidavit signed by Flood in 2011, six years after his 2005 conviction, Flood swore that at the time of the trial, he "did not believe [his] chances of winning" were "very good." J.A. 92. He expressed: "All I wanted to do was avoid getting a life sentence, I was hoping I could get a plea and get a lower sentence." *Id.* He further noted that, as far as he knew, his "lawyers never asked the government about the possibility of a plea before the trial." *Id.*

In 2012, one of Flood's lawyers, Michael Lawlor, also submitted an affidavit explaining what he recalled about Flood's trial and about the potential for a plea bargain. Lawlor opined that he provided ineffective assistance to Flood by "failing to seek a pre-trial resolution of this case." J.A. 95. He stated that this failure "was not based on any strategic decision," or "any reluctance to plead guilty by Mr. Flood," but rather occurred because he and his co-counsel, John McKenna, "didn't know better." J.A. 95–96. Lawlor recalled that the prosecutor, Ms. Wilkinson, approached him "about the prospect of

---

[2] To list a few examples: Flood facilitated the relocation of the kidnapping vehicle from D.C. to North Carolina, where his parents sold it; DNA testing identified blood on the car's rear floorboard as Hayes's; phone records showed a co-defendant using Flood's phone to summon a ride shortly after the shooting; and Flood lied to the grand jury about his role in hiding the car.

pleading" during jury selection, and that he and McKenna met with the government's lawyers to discuss a plea that night. J.A. 96. The prosecutors told them "that in order to receive an offer, Mr. Flood would have to proffer."[3] *Id.* After discussing the matter, both Lawlor and McKenna agreed that proffering "at this stage of the case was too risky." *Id.* According to Lawlor, they "failed, however, to permit Mr. Flood to make an election about proffering." *Id.* That's true even though Lawlor and McKenna had previously talked to him about the possibility of pleading guilty, and Lawlor recalled that Flood "was not reluctant to do so." *Id.*

At a 2017 hearing on Flood's § 2255 motion, Wilkinson stated she did not recall meeting with Flood's counsel about the possibility of proffering. But for purposes of this appeal, the government does not dispute Lawlor's account. Appellee Br. at 7. In an affidavit executed in 2017, Wilkinson swore that the government "believed that absent cooperation, Flood should receive a life sentence" and they "would not offer any plea agreement that did not include a truthful proffer and cooperation." J.A. 226. She further noted that "[b]ased on our interactions with [Flood] and counsel . . . we believed that [Flood] did not want to and would not testify against his co-conspirators," so "any plea offer that would have been acceptable to [the government] would not have been acceptable

---

[3] A "proffer" is an agreement between a defendant and the government setting forth the terms under which a defendant will provide information to the government during an initial interview. *United States v. Lopez*, 219 F.3d 343, 345 n.1 (4th Cir. 2000) (citing Harry I. Subin et al., *Federal Criminal Practice* § 10.5 (1992)). A "proffer" often leads to cooperation and a plea agreement, but not always. *See* Barry Boss et al., *Federal Criminal Practice* §§ 10:97.2, 13:41 (2024) (describing the "proffer process" and summarizing cooperation-based plea agreements).

4

to" Flood. *Id.* Therefore, the government "did not offer, and would not have offered, any plea agreement to [Flood] even if counsel had requested one." *Id.*

Nothing came of the proffer discussion, and Flood went to trial. The jury convicted him on all counts. The court sentenced him to life for Count 1 (kidnapping resulting in death), ten years for Count 2 (conspiracy to kidnap), five years for Count 3 (use of a firearm in a crime of violence), and twenty-five years each for Counts 4 and 5 (same)—all to run consecutively. Flood timely appealed his sentence and convictions, which we affirmed. *Lighty*, 616 F.3d at 380.

In 2011,[4] Flood filed a § 2255 motion to vacate, set aside, or correct his sentence. He attached his and Lawlor's affidavits, discussed above, to the motion. He also attached federal plea statistics and an affidavit from a defense attorney, William Purpura, who opined that "[f]ailing to pursue a plea in this case was a breach of the standard of care." J.A. 80. In the motion itself, Flood mounted several challenges to his convictions, including a long list of ways he believes his counsel rendered constitutionally ineffective assistance. The district court rejected Flood's ineffective assistance of counsel claims

---

[4] One might reasonably question why it took *fifteen years* for Flood's motion to reach this Court. First, it took several years to litigate a *Batson* claim in the § 2255 motion—a claim that involved all the defendants, not just Flood. Second, in 2016, Flood supplemented his original § 2255 motion, in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). While the district court resolved all of the claims from the original motion in 2018, the court stayed the supplemental *Johnson* claims, pending appeals in this Court and the Supreme Court that could have impacted the district court's decision. There would be no final judgment until the district court decided those claims, so Flood needed to wait for their resolution before he could appeal. *See* Fed. R. Civ. P. 54(b). The district court ruled on Flood's remaining *Johnson* claims in 2023, rendering a final judgment, at which point Flood timely sought a certificate of appealability in this Court.

without holding an evidentiary hearing. *See Flood v. United States*, 345 F. Supp. 3d 599, 614 (D. Md. 2018).

Flood timely appealed. This Court granted a certificate of appealability regarding only one of his ineffective-assistance theories: "Whether the district court abused its discretion by rejecting, without an evidentiary hearing, Flood's claim that trial counsel rendered ineffective assistance by failing to pursue a plea agreement on his behalf."

## II.    LEGAL FRAMEWORK

### A.    Denial Of A § 2255 Motion Without An Evidentiary Hearing

When a convict files a § 2255 motion, the district court must hold a hearing, "*[u]nless* the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b) (emphasis added); *Machibroda v. United States*, 368 U.S. 487, 494 (1962). Where, as here, a district court denies relief without holding an evidentiary hearing, we review the "district court's decision to forego an evidentiary hearing for abuse of discretion." *United States v. Sutherland*, 103 F.4th 200, 207 (4th Cir. 2024).[5] And we review the district court's legal conclusions *de novo*. *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021).

"We have been less than perfectly consistent" about what makes a showing conclusive under § 2255(b), "analogizing a denial of § 2255 relief without a hearing both to a grant of summary judgment and to a grant of a motion to dismiss." *United States v.*

---

[5] A court "abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022) (cleaned up).

6

*Hashimi*, 110 F.4th 621, 627 n.3 (4th Cir. 2024) (citations omitted).  The statute's text and the Rules Governing Section 2255 Proceedings supply the answer.

First, the text:  "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon."  § 2255(b).  A claim thus demands a hearing only if the files and records leave room for relief.  The use of the word "conclusively" suggests it need not be much room.  "Conclusively" describes something that occurs "[i]n a conclusive manner; so as to conclude or decide the question or matter; decisively, [or] finally."  *Conclusively, Oxford English Dictionary* (2d ed. 1989).  The word "conclusively" tells us to read the record in the convicted person's favor:  If the record reveals something *less than* a conclusive showing that the convicted person will lose—a high bar—the court may not immediately deny the motion and instead must first hold a hearing.  *Cf. Hashimi*, 110 F.4th at 627 ("[W]e view the facts in the light most favorable to the § 2255 movant . . . and draw reasonable inferences in his favor.").

But the statute also fixes what the court may look at:  "the files and records of the case."  § 2255(b).  Thus, a court should not consider information outside the record before it, including speculation about what might later be added to it.  So while we require a hearing if there is anything short of a conclusive showing that the movant is not entitled to relief—a rule that favors § 2255 movants—we do not look beyond the record or speculate in the convicted person's favor when deciding whether such a showing exists.

7

Second, consider the Rules Governing Section 2255 Proceedings.[6]  Rule 4 governs a judge's "preliminary review" of a § 2255 motion.  If, after "promptly examin[ing]" the motion, "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."  Rule 4(b).  This standard is akin to the one district courts must apply when evaluating a motion to dismiss for failure to state a claim.  *Cf.* Fed. R. Civ. P. 12(b)(6) (permitting dismissal where the pleading fails to state a claim on which relief can be granted).  A court initially considers a § 2255 motion as it would consider a complaint facing a motion to dismiss, asking whether the motion's allegations—if taken as true— entitle the movant to relief.

Other rules come into play if the motion survives Rule 4(b) review.  The judge "must order" the government to respond or "take other action the judge may order."  Rule 4(b).  Rule 5 governs the answer and reply briefs filed by the government and movant.  Rule 6 governs discovery, and Rule 7 permits "the parties to expand the record" at the judge's direction, "by submitting additional materials relating to the motion."  Rule 7(a).  Rule 8(a) requires the judge to "review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  Rule 8(a).  These procedures resemble those that govern summary judgment.  *Cf.* Fed. R. Civ. P. 56 (permitting judgment without trial where the record shows no

---

[6] Congress approved and enacted these Rules into law in 1976.  *See* An Act to approve in whole or in part, with amendments, certain rules relating to cases and proceedings under sections 2254 and 2255 of title 28 of the United States Code, Pub. L. No. 94-426, 90 Stat. 1334 (1976).

genuine dispute of material fact). Just as a court resolves a motion for summary judgment on the developed record before proceeding to trial, a court deciding a § 2255 motion considers the briefs and expanded record before proceeding to an evidentiary hearing.[7]

These stages explain our precedent. We have compared hearing-free denials both to Rule 12(b)(6) dismissals and to Rule 56 summary judgments. *See, e.g.*, *United States v. Paylor*, 88 F.4th 553, 565 (4th Cir. 2023) (analogizing to Rule 12(b)(6) dismissal); *Mayhew*, 995 F.3d at 176 (analogizing to summary judgment). Both analogies are right. They just apply at different stages of a § 2255 proceeding. So determining which analogy applies in a particular case depends on when in the proceedings the district court dismissed the § 2255 motion.

When we review a district court's denial of a § 2255 motion at the Rule 4 stage, we are guided by the principles governing review of a Rule 12(b)(6) dismissal. So we "accept a petitioner's well-pleaded allegations as true," and ask whether the record conclusively forecloses relief notwithstanding those allegations. *Paylor*, 88 F.4th at 565 (cleaned up). And when a district court denies a § 2255 motion at the Rule 8 stage—after receiving

---

[7] Section 2255(b) requires "a prompt hearing"—the statute nowhere says "evidentiary." Indeed, the court may "entertain and determine" the motion "without requiring the production of the prisoner at the hearing." § 2255(c). The Rules supply the form: preliminary review under Rule 4, expansion of the record under Rule 7, and, only if the expanded record leaves a material dispute, the "evidentiary hearing" of Rule 8. *See Machibroda*, 368 U.S. at 495–96 (noting that "the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner"); *Raines v. United States*, 423 F.2d 526, 529–30 (4th Cir. 1970) ("[T]he statute makes a hearing mandatory," but "a permissible intermediate step . . . may avoid the necessity for an expensive and time consuming evidentiary hearing in every Section 2255 case."); *cf. Blackledge v. Allison*, 431 U.S. 63, 80–82 & n.25 (1977) (endorsing these procedures under the parallel § 2254 rules).

9

additional briefing and evidence, but without holding an evidentiary hearing—"we treat the district court's decision like a grant of summary judgment." *Hashimi*, 110 F.4th at 627; *see Blackledge*, 431 U.S. at 80–81. So we will affirm a district court's denial of relief without a hearing when the record leaves "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In so doing, we do not weigh evidence or make credibility determinations. *Cf. Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). And at both the Rule 4 and Rule 8 stages, we draw all reasonable inferences in the movant's favor. *Hashimi*, 110 F.4th at 627; *Paylor*, 88 F.4th at 565.

Here, the district court asked for additional briefing and expansion of the record before denying Flood's § 2255 claim. It even held a non-evidentiary hearing. So the denial in this case is akin to a grant of summary judgment: If the record conclusively shows that Flood was not entitled to relief on his Sixth Amendment claim—meaning that the record, crediting Flood's factual allegations and drawing all reasonable inferences in his favor, leaves no genuine dispute of material fact—then the district court could deny the motion without an evidentiary hearing. Absent that showing, denying the claim without a hearing is an abuse of discretion. The hearing question and the merits merge because a hearing is owed only when crediting the movant would entitle him to relief. So in order to decide whether the district court abused its discretion by denying Flood's claim without an evidentiary hearing, we must assess whether the record conclusively showed that Flood could not satisfy the two prongs of his ineffective-assistance-in-pleading claim. We turn next to what each prong requires.

10

### B.   Sixth Amendment Claims For Ineffective Assistance Of Counsel In Pleading

"[T]here is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). "[A] defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Missouri v. Frye*, 566 U.S. 134, 148 (2012) (citations omitted). Nonetheless, criminal defendants have a right to effective assistance of counsel in "the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

When bringing a Sixth Amendment ineffective-assistance claim, the convicted defendant bears the burden of showing (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the performance prong, a convicted defendant cannot simply assert that counsel was ineffective; he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. And on the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

Turning to the particulars of ineffective-assistance-in-plea-bargaining claims, the Supreme Court has acknowledged that the question of "how to define the duty and responsibilities of defense counsel in the plea bargain process" is "difficult." *Frye*, 566 U.S. at 144. Indeed, "[t]he alternative courses and tactics in negotiation are so individual

11

that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Id.* at 145. For that reason, the Court's holdings on counsel's performance in plea bargaining have remained case-specific.

When it comes to the prejudice prong, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Where the "prejudice alleged" is "[h]aving to stand trial" after ineffective assistance led to the rejection of a plea offer, a defendant must show a reasonable probability that, but for counsel's deficient performance, (1) "the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "the court would have accepted its terms," and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 163–64; *see also Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013).[8]

---

[8] In this Circuit, a movant who rejected a plea offer need not produce contemporaneous evidence corroborating his claim that he would have accepted the offer if counsel advised him competently; his own allegation to that effect, if credible, may suffice. *United States v. Brown*, 137 F.4th 248, 255 (4th Cir. 2025); *but see Lee v. United States*, 582 U.S. 357, 369 (2017) (explaining that courts should not upset an *accepted* plea offer based solely on *post hoc* assertions about how the defendant would have pleaded, and therefore should look to contemporaneous evidence substantiating his claim). But that rule does not help Flood. *Brown* relieves a movant of the need to corroborate his assertion; it does not relieve him of the need to make one. Here, Flood never alleges that he would have accepted the kind of offer the government was willing to make—one conditioned on cooperation. So there is no assertion to credit, with or without corroboration.

## III.  THE DISTRICT COURT PROPERLY DENIED FLOOD'S § 2255 CLAIM WITHOUT AN EVIDENTIARY HEARING

The district court would have needed to hold an evidentiary hearing if the record—drawing all reasonable inferences and resolving genuine disputes in Flood's favor—showed that Flood could satisfy both *Strickland* prongs.  *See Mayhew*, 995 F.3d at 176–77.  A bare allegation will not do, and neither will a disputed fact that has no bearing on the outcome.  The record conclusively shows that Flood's claim fails twice over—on performance and on prejudice—so the district court was not required to hold a hearing before denying his § 2255 motion.

One point of scope before the merits.  Flood does not pursue a claim that counsel failed to tell him about the government's interest in a proffer so that he could make the decision.  At oral argument, when asked if Flood brought a failure-to-communicate claim, counsel responded "that would be a *Frye* claim and we're not bringing a *Frye* claim here."  *See* Oral Argument at 40:00–41:17, *United States v. Flood*, No. 23-7032 (4th Cir. Oct. 24, 2025); *Frye*, 566 U.S. at 145–47.  Flood did not raise this claim in his § 2255 motion, and we granted a certificate of appealability based only on Flood's claim that his counsel "rendered ineffective assistance by failing to pursue a plea agreement on his behalf," not a claim that they rendered ineffective assistance by failing to tell him that the government expressed interest in negotiating a plea if he agreed to cooperate.[9]  The claim we do

---

[9] We need not decide whether counsel's failure to communicate the government's overture could support a distinct Sixth Amendment claim.  *See Frye*, 566 U.S. at 145 ("[D]efense counsel has the duty to communicate *formal offers* from the prosecution to (Continued)

decide—indeed the only claim before us—is whether Flood's counsel was ineffective in the plea-bargaining process.

## A.      Performance

Flood's performance theory fails at the threshold.  A convicted defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Flood never does.  And however favorably we read the record, we cannot find counsel's performance deficient without knowing what counsel did wrong.[10]

In his brief, Flood says that his counsel rendered ineffective assistance "when they failed to seek a plea agreement."  Appellant Br. at 17.  He also says counsel "never even engaged in plea discussions."  *Id.*  But in the same brief, Flood acknowledges that when the government approached his counsel about the prospect of a plea, his counsel met with the prosecutors to discuss a potential plea agreement.  *Id.* at 5–6, 19.  In those discussions, the government made clear "that in order to receive an offer, Mr. Flood would have to proffer."  *Id.* at 6 (quoting Lawlor's Affidavit).

However Flood frames counsel's alleged deficiency, the claim fails.  Read as a charge that counsel "never even engaged in plea discussions," *id.* at 17, it founders on the record:  By Flood's own admission, his counsel met with the prosecutors and learned that

---

accept a plea on terms and conditions that may be favorable to the accused." (emphasis added)).

[10] The district court assumed deficient performance and rested its denial on prejudice alone. *Flood*, 345 F. Supp. 3d at 612–13. We could affirm on that ground alone, but the record conclusively shows that Flood failed on both.

14

the government's terms required cooperation.[11]   Read instead as a charge that counsel, having met with prosecutors to discuss a plea, should have done something more or pressed harder, it identifies no act or omission that fell outside the wide range of reasonable professional assistance.  "Try harder" or "do more" is not a *Strickland* theory.  *See* Oral Argument at 1:10–3:03, *United States v. Flood*, No. 23-7032 (4th Cir. Oct. 24, 2025) (arguing that trial counsel should have had "the singular objective" of "find[ing] a way to plea this case out," without explaining what that "way" should have been).

On *Strickland*'s performance prong, defendants "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690.  Without knowing what counsel did wrong, we cannot assess whether his assistance was deficient—or, at the prejudice stage, whether it made any difference.[12]

---

[11] This is not a case where no plea discussions occurred, or where the government initiated talks and defense counsel did nothing.  Our decision therefore does not bear on those cases. *Cf. United States v. McNeil*, 126 F.4th 935, 945–47 (4th Cir. 2025) (remanding for a hearing where the movant identified a specific omission—counsel's refusal to do anything to seek a plea despite his client's repeated requests that he do so).  Nor does it reach the broader question of whether a defendant may claim ineffective assistance in plea bargaining absent a formal plea offer—an issue that has divided the courts of appeals. *See Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019) (permitting such a claim without a formal offer); *id.* at 263–68 (Griffin, J., dissenting) (collecting cases requiring one). Because Flood has not identified any particular act or omission, we leave that question open.

[12] We see this need for specificity on the performance prong in the Supreme Court's ineffective-assistance-in-pleading precedent—even where the Court decided the case on prejudice grounds.  (This makes sense:  It is impossible for a court to determine whether an act or omission changed the outcome on the prejudice prong without an adequate understanding of the act or omission at issue.) *See Lafler*, 566 U.S. at 163 (noting that "all parties agree" counsel's performance "was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial"); *Frye*, 566 U.S. at 145 (Continued)

Looking to Flood's § 2255 motion itself, he claimed that "counsel rendered constitutionally ineffective assistance by failing to resolve this case with a plea agreement." J.A. 42. But the failure to secure a plea cannot itself establish deficient performance under *Strickland*. That is akin to arguing that counsel was deficient for failing to win at trial. Effective lawyers fail to achieve their clients' desired outcomes *all the time*. The Sixth Amendment guarantees competent representation, not favorable results. *Strickland*'s performance prong turns not on the outcome but on whether counsel's acts or omissions fell outside the wide range of reasonable professional competence. *Strickland*, 466 U.S. at 690.

Absent some specification of counsel's deficient acts or omissions, the record and filings conclusively show that Flood is not entitled to relief. *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) ("Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (cleaned up)); *see also Machibroda*, 368 U.S. at 495–96 (requiring a hearing on the

---

(holding, on the performance prong, that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"); *Padilla*, 559 U.S. at 360 (identifying the deficient performance at issue as a failure to "advise [the defendant] that the offense to which he was pleading guilty would result in his removal from this country"); *Hill*, 474 U.S. at 60 (identifying the allegedly deficient performance as counsel's erroneous advice about parole eligibility, then resolving the case on prejudice). The same goes for this Court's cases. *See Brown*, 137 F.4th at 250 (noting that counsel incorrectly advised defendant that he faced a ten-year maximum sentence regardless of whether he accepted a plea offer); *Merzbacher*, 706 F.3d at 365 (calling counsel's alleged failure to convey and counsel on a ten-year plea offer "a very close question" on performance, then resolving the case on prejudice). None of these cases involve a convicted person claiming that counsel should have simply tried harder or done more.

16

movant's "specific and detailed factual assertions," while explaining that the "language of the statute does not strip the district courts of all discretion to exercise their common sense" and that "vague, conclusory, or palpably incredible" allegations require none).[13]

## B.    Prejudice

Even if Flood could clear the performance prong, the record conclusively shows that he cannot establish prejudice. To establish prejudice, he must show a reasonable probability that, but for counsel's putatively deficient performance: the government would have extended a plea offer, he would have accepted it, the government would not have withdrawn it, the court would have accepted its terms, and those terms would have yielded a lesser sentence. *Cf. Lafler*, 566 U.S. at 164.[14] "A reasonable probability is a probability

---

[13] It does not matter that Lawlor himself said he believed his assistance was ineffective. Whether performance was deficient is a legal question, and counsel's say-so does not answer it. Lawlor's affidavit identifies nothing that he should have done differently beyond trying harder or doing more. That he regrets falling short of what *he* considers reasonable standards does not establish that he actually did. Flood's plea statistics and Purpura's affidavit are also irrelevant. Neither helps identify the particular acts or omissions of trial counsel that amounted to deficient performance. We do not doubt the statistics, but figures about plea bargaining *in general* say little about what competent representation required in this *particular* case, which involved a death-penalty-eligible offense carrying a mandatory life sentence. And Purpura's affidavit, which states that he could not "fathom not seeking a plea" in Flood's position, J.A. 80, runs up against the record: Counsel *did* discuss a plea with the government, even if only on the eve of trial. Stripped of the premise that counsel never "[sought] a plea," Purpura's objection reduces— once again—to the charge that counsel simply should have tried harder or done more.

[14] *Lafler* provides a prejudice test for cases in which counsel's bad advice led a defendant to reject an existing plea offer and stand trial. 566 U.S. at 163–64. It therefore does not squarely govern cases like this one, where the government never offered a plea, but merely expressed interest in negotiating one. *Lafler* is still the closest analogue. So we assume a modified *Lafler* test would apply: one requiring the defendant to show a reasonable probability not only of the factors *Lafler* identifies, but also that he would have (Continued)

sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, requiring "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (cleaned up).[15]

The chain breaks at acceptance:  The record conclusively shows no reasonable probability that Flood would have accepted the kind of plea offer the government was willing to make.  Nothing in the record—no affidavit, no allegation, no reasonable inference—shows a reasonable probability that either (1) the government would have considered a plea offer that did not involve a proffer and cooperation, or (2) Flood would have accepted an offer that required a proffer and cooperation.  Since there is no dispute of material fact, the district court properly denied the motion without a hearing.[16]

---

received a plea offer in the first place.  And we do so without deciding whether a convicted defendant may bring a *Strickland* claim without first having received a plea offer.  *See supra* note 11.

[15] The standard of review here has three layers, each nested inside the one before it, like a matryoshka doll.  We review the denial of an evidentiary hearing for abuse of discretion.  And a court abuses that discretion when it denies a hearing despite a record that does not conclusively show that the movant is not entitled to relief.  And whether the record conclusively shows that turns on the merits of Flood's *Strickland* claim, which asks whether there is a "reasonable probability" that his sentence would have been lower.  So our inquiry collapses into a single question:  whether the record conclusively forecloses a reasonable probability of a lower sentence.

[16] We thus assume that, if Flood had cooperated, the government would have offered a plea agreement that opened the door to a sentence less than life.  *See* 18 U.S.C. § 3553(e) (authorizing a sentencing court, upon the government's motion, to impose a sentence below an otherwise applicable statutory minimum "so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person").  We also assume that the district court would have accepted such an agreement, even though the record tells us nothing of its terms beyond requiring "a truthful proffer and cooperation."  J.A. 226.

18

First, cooperation was non-negotiable, and both sides' affidavits say so. Lawlor recalled the prosecutors' condition: to receive an offer, Flood had to proffer. And Wilkinson swore that the government would not offer a plea agreement without a truthful proffer and cooperation.

Second, the record shows that there was no reasonable probability that Flood was willing to proffer and cooperate in exchange for a lower sentence. Wilkinson's affidavit states that "[b]ased on our interactions with [Flood] and counsel . . . we believed that [Flood] did not want to and would not testify against his co-conspirators." J.A. 226. While Lawlor's affidavit says any plea would have required cooperation, it never says Flood was willing to give it. It says only that Flood "did not indicate he would not plead guilty" and "was not reluctant" to plead guilty. J.A. 96. That allegation does not, without more, support an inference that Flood was willing to provide a truthful proffer and cooperation against his friends.

Nor does Flood's affidavit say anything about cooperation. Flood says that "[a]ll [he] wanted to do was avoid getting a life sentence," and that he "was hoping [he] could get a plea and get a lower sentence." J.A. 92. Even read in his favor, this does not indicate that Flood would have accepted the cooperation condition. While we must credit the allegations he makes, we cannot put words in his mouth. *Cf. Hashimi*, 110 F.4th at 632.[17]

---

[17] In *Hashimi*, the movant swore that he never authorized his counsel's concession of guilt, and we credited that allegation; the only contrary account was "pure speculation" that the record did not support, so a hearing was required to resolve the dispute. 110 F.4th at 632. Here the posture is reversed. Flood swears he wanted to avoid a life sentence and hoped for a plea. He does not swear that he would have proffered, cooperated, and testified (Continued)

19

Ultimately, Flood acknowledges that cooperation was the price of any plea but never alleges that he would have paid it. His own § 2255 memorandum acknowledged that the government would require a proffer before any offer was made. Lawlor's 2012 declaration and Wilkinson's 2017 affidavit put the cooperation condition squarely on the record. Yet through years of litigation—including a hearing devoted to whether an evidentiary hearing was needed—Flood never swore that he would have proffered and testified against his co-conspirators.[18] So finding that he would have done so would rest on "rank speculation, defying calculation of a reasonable probability." *See United States v. Basham*, 789 F.3d 358, 375 (4th Cir. 2015) (quoting *United States v. Fulks*, 683 F.3d 512, 522 (4th Cir. 2012)); *see also Carson v. United States*, 88 F.4th 633, 636 (6th Cir. 2023) ("[O]nly speculation supports [the] claim that the parties would have reached a deal but for counsel's inaction."). The record thus gave the district court no basis to find that Flood would have accepted the only kind of offer the government would have made. Without that finding,

against the men who helped him kidnap and kill Hayes—the precondition to any plea—and the only record evidence on the point cuts against him. So, even crediting everything that Flood alleged and drawing every reasonable inference from it, the dispositive fact remains unalleged. So any claim of prejudice is speculative. In *Hashimi*, the autonomy claim required no showing of prejudice, so a single favorable inference on the disputed fact warranted a hearing. Flood's claim, however, *does* require prejudice, and no inference can manufacture an element that he never pleaded and the record nowhere supports.

[18] Indeed, what the record affirmatively shows cuts the other way. Flood's defense at trial was that "he was not a participant in the Hayes kidnapping and murder." *Lighty*, 616 F.3d at 349. Before trial, he hid the car, lied to the grand jury about it, and asked his uncle to lie as well. Flood maintained his innocence under oath and obstructed the investigation, so the record does not suggest that he would have proffered, cooperated, and testified against the men who helped him kidnap and kill Hayes. *See Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014) (finding that movant suffered no prejudice where he "never expressed a willingness to cooperate").

prejudice is not reasonably probable; it is speculative. And speculation entitles a movant to nothing—not relief, and not a hearing.

Flood nonetheless contends that the record contains disputes of material fact that would permit a finding of prejudice. He is wrong.

Flood argues that Wilkinson's affidavit created a dispute of material fact when it said, "we did not offer, and would not have offered, any plea agreement to the defendant even if counsel had requested one." J.A. 226. He argues that an evidentiary hearing is required because this leaves unclear whether the government would have offered a cooperation-based plea or no plea at all. But this suggestion ignores the context. The full statement reads:

> The victim's family articulated their desire that each of the Defendants receive the maximum sentence possible. We believed that absent cooperation, Flood should receive a life sentence. We would not offer any plea agreement that did not include a truthful proffer and cooperation. Based on our interactions with the defendant and counsel as early as the investigation stage pre-indictment, we believed that the defendant did not want to and would not testify against his co-conspirators. We were of the opinion that any plea offer that would have been acceptable to us would not have been acceptable to the defendant. Hence, we did not offer, and would not have offered, any plea agreement to the defendant even if counsel had requested one.

J.A. 226. In context, Wilkinson's statement reflects a belief that Flood should get a plea bargain only if he truthfully proffered and cooperated, that he did not want to cooperate, and, therefore, that the government would not have offered a plea. This is fully consonant with other parts of the record, like Lawlor's affidavit, which shows that the government was willing to extend an offer only with Flood's cooperation. *See* J.A. 109 (government counsel representing that it "would not have even contemplated a plea offer absent

21

cooperation from Flood"). And Flood did not express any willingness to take that kind of offer.

Even crediting Lawlor's account in full, no material factual dispute remains. Lawlor says that the government reached out, that counsel rejected the overture, and that counsel had no strategy. But Flood still loses, because cooperation was the price of any deal and he never says he would have paid it. Where crediting the movant still yields defeat, no credibility finding is necessary, and § 2255(b) requires no hearing. Flood's silence is not a dispute. *Cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). It is a gap, and the gap is his to fill.[19]

*          *          *

Flood identifies no act or omission that could establish deficient performance, and no factual dispute whose resolution could establish prejudice. Even on the version of events most favorable to him, the record conclusively shows that he is not entitled to relief. The district court therefore did not abuse its discretion in declining to hold an evidentiary hearing.

---

[19] The district court incorrectly suggested that evidentiary hearings on § 2255 motions are "the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Flood*, 345 F. Supp. 3d at 614 (cleaned up). This was an error. The statute imposes no heavy burden and creates no default against hearings. Still, the district court then applied the correct standard—*i.e.*, whether the record "conclusively show[s] that the prisoner is entitled to no relief"—in concluding that no evidentiary hearing was required. *Id.* The misstatement was therefore harmless. *See* 28 U.S.C. § 2111 (directing appellate courts to disregard errors "which do not affect the substantial rights of the parties"); Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

*AFFIRMED*

TOBY HEYTENS, Circuit Judge, dissenting:

I would vacate and remand for an evidentiary hearing. Under this Court's precedent, such "a hearing is *required* when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim." *United States v. Mayhew*, 995 F.3d 171, 176–77 (4th Cir. 2021) (emphasis added). The district court did not apply that standard in determining whether Flood's case warranted a hearing. That alone was an abuse of discretion. What is more, the district court also erred by disregarding record evidence "suggesting [Flood] would have accepted [a plea] offer" (JA 248)—evidence that rendered the court's no-prejudice holding untenable.[*]

To start, the district court announced—and, in my view, applied—the wrong legal standard in determining whether an evidentiary hearing was warranted. The court began its discussion by quoting the relevant statutory language and a non-precedential 2012 decision from this Court announcing the correct legal standard. But immediately after doing so, the district court went astray by quoting another district court opinion for the proposition that— "[n]otwithstanding" what both the statutory text and this Court's precedent say—"it is *settled* that evidentiary hearings on [Section] 2255 petitions are the *exception, not the norm*,

---

[*] The district court did not decide whether the record conclusively showed Flood's trial counsel was not deficient and instead assumed that counsel was deficient. See JA 247. Consistent with this Court's role as one of review rather than first view, I would decline to decide in the first instance the fact-specific question of whether Flood can succeed in satisfying *Strickland*'s performance prong.

and there is a *heavy burden on the petitioner* to demonstrate that an evidentiary hearing is warranted." JA 249 (alterations and quotation marks removed; emphases added).

None of that is true. As the statutory text and this Court's precedent make clear, the default presumption is in favor of a hearing, not against one. See *Mayhew*, 995 F.3d at 176 ("A district court *must* hold an evidentiary hearing on a petitioner's *Strickland* claim '*unless* the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" (quoting 28 U.S.C. § 2255(b); emphasis added; alterations removed)). Nor does the district court's opinion identify any authority for the proposition that Flood had to carry "a heavy burden" just to get a hearing. JA 249.

But even if the district court had set out the correct standard, it erred in concluding Flood could not show *Strickland* prejudice as a matter of law. Despite acknowledging that the affidavit Flood submitted in support of his motion was "evidence" "suggesting he would have accepted [a plea] offer" had one been made, the district court discredited that evidence because it was "self-serving" and offered "after-the-fact." JA 248.

That reasoning is also inconsistent with binding precedent. In *Mayhew*, this Court held that a different Section 2255 petitioner's "declaration under penalty of perjury" was "evidence" that was "enough to put the [*Strickland*] question at issue"—thereby requiring the district court to hold an evidentiary hearing. 995 F.3d at 178. What is more, *Mayhew* rejected government-proffered arguments that mirrored the district court's reasoning in this case: that Section 2255 movants must "substantiate[]" their own factual assertions to obtain an evidentiary hearing or that a district court may dispense with one if it concludes a movant's own account "lacks all credibility" because it is self-serving or was first made

25

"well after [the movant's] trial and sentencing." *Id.* at 178–79. As *Mayhew* reminds us, evaluating "credibility" "*is what evidentiary hearings are for*." *Id.* (emphasis added).

Nor was discounting Flood's affidavit a harmless error. In my view, a factfinder who credited the assertions in Flood's affidavit *could*—contra the district court's holding—conclude that Flood was prejudiced by his attorney's actions in this case. In his affidavit, Flood asserts: "*All* I wanted to do was avoid getting a life sentence." JA 92 (emphasis added). Because "all" most naturally means "all," a reasonable factfinder could permissibly conclude that Flood would have been willing to do *anything* necessary—including, of course, cooperate with the government—to receive a plea offer and enter that plea successfully. The record contains evidence that the government was interested in reaching a plea deal too, because it approached defense counsel on the eve of trial to discuss the potential of Flood cooperating and pleading. Assuming (as we must at this stage) the truth of both of those things, a reasonable factfinder could well find that—but-for the deficiencies in performance that the district court assumed for purposes of its analysis—Flood and the government would have reached a plea deal that would have been accepted by the court.

Like this Court in *Mayhew*, I "express no view as to whether" Flood "ultimately can prevail under . . . *Strickland*." 995 F.3d at 181. "[A]fter a hearing," the district court "may find that [Flood's] account . . . is not accurate, or that his allegations otherwise lack credibility." *Id.* "Or the court might find that a fuller record substantiates the government's position that" Flood would not have successfully pleaded, stumbling at any of the intermediate steps. *Id.* As in *Mayhew*, I would hold "simply that the current record does

26

not 'conclusively' foreclose [Flood's] *Strickland* claim, and that [Flood] therefore is entitled to an evidentiary hearing under [Section] 2255(b)." *Id.*